# 26-1007

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

DAVID STERN,
on behalf of himself and all other persons similarly situated,

*Plaintiff-Appellant*

—against—

ELECTROLUX HOME PRODUCTS, INC.,

*Defendant-Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR PLAINTIFF-APPELLANT

BRUCE H. NAGEL
NAGEL RICE LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973) 618-0400
*Attorneys for Plaintiff-Appellant*
*David Stern*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................iv

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................2

STATEMENT OF THE CASE................................................................4

    A. Factual Background...................................................................4

    B. Plaintiff's Purchase Of A Defective Refrigerator ........................8

    C. Procedural History..................................................................10

SUMMARY OF THE ARGUMENT .......................................................12

ARGUMENT ...................................................................................16

I.     STANDARDS OF REVIEW......................................................16

II.    STANDARD GOVERNING MOTIONS
      TO DISMISS .......................................................................16

III.   THE DISTRICT COURT ERRED BY
      DISMISSING PLAINTIFF'S CLAIMS FOR
      VIOLATIONS OF NEW YORK'S
      GENERAL BUSINESS LAW....................................................17

    A. Standard Governing Claims Pursuant To
       Sections 349 And 350 Of New York's
       General Business Law ............................................................17

    B. The District Court Erred By Ruling That
       The SpaceWise Advertisement Does Not
       Relate To The Durability Or Quality Of
       The Shelves And Drawers As A Matter Of Law ......................19

i

C. The District Court Erred By Dismissing Plaintiff's Omission-Based GBL Claim And Ruling That Plaintiff Could Have Discovered The Defect Himself ...............................................25

IV. THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFF'S CLAIM FOR FRAUDULENT CONCEALMENT/NONDISCLOSURE .....................................29

V. THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFF'S CLAIM FOR NEGLIGENT MISREPRESENTATION .......................................31

VI. THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFF'S CLAIMS FOR BREACH OF THE EXPRESS AND IMPLIED WARRANTIES ..............................................32

A. Standard Governing Claims For Breach Of Express Warranty .................................................32

B. The District Court Erred By Dismissing Plaintiff's Express Warranty Claim Because Privity Is Not Required...............................................34

C. The District Court Erred By Dismissing Plaintiff's Express And Implied Warranty Claims Because Plaintiff Provided Timely Notice To Defendant ................................................38

VII. THE DISTRICT COURT ERRED BY RULING THAT ANY DISMISSAL OF PLAINTIFF'S CLAIMS SHOULD BE WITH PREJUDICE, AND THAT PLAINTIFF SHOULD NOT BE PROVIDED WITH AN OPPORTUNITY TO FILE AN AMENDED PLEADING ........................................41

CONCLUSION...............................................................42

CERTIFICATE OF COMPLIANCE WITH
TYPE-VOLUME LIMIT, TYPEFACE
REQUIREMENTS, AND TYPE STYLE
REQUIREMENTS ................................................................................................43

# TABLE OF AUTHORITIES

**Cases**                                                 **Pages**

Ainger v. Michigan Gen. Corp.,
476 F. Supp. 1209 (S.D.N.Y. 1979)...................................................................... 34

Anschutz Corp. v. Merrill Lynch & Co., Inc.,
690 F.3d 98 (2d Cir. 2012)..................................................................... 31

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ........................................................................... 17

Ault v. J.M. Smucker Co.,
No. 13 CIV. 3409 PAC, 2014 WL 1998235
(S.D.N.Y. May 15, 2014)..................................................................... 21

Avola v. La.-Pac. Corp.,
991 F. Supp. 2d 381 (E.D.N.Y. 2013) .................................................... 33

Babayev v. Medtronic, Inc.,
228 F. Supp. 3d 192 (E.D.N.Y. 2017) ................................................... 33

Bannister v. Agard,
5 N.Y.S.3d 114 (2d Dep't 2015)............................................................ 29

Bascunan v. Elsaca,
874 F.3d 806 (2d Cir. 2017)................................................................. 16

Bayne v. Target Corp.,
630 F. Supp. 3d 544 (S.D.N.Y. 2022)............................................... 40, 41

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007) ...................................................................... 16, 17

Bregman Screen & Lumber Co. v. Bechefsky,
83 A.2d 804 (N.J. App. Div. 1951)........................................................ 33

Buonasera v. Honest Co., Inc.,
208 F. Supp. 3d 555 (S.D.N.Y. 2016)..................................................... 21

iv

Cohen v. Nutricost,
  747 F. Supp. 3d 467 (E.D.N.Y. 2024) ...................................................... 35, 36, 37

Colpitts v. Blue Diamond Growers,
  527 F. Supp. 3d 562 (S.D.N.Y. 2021)............................................................ 19, 20

Cooper v. Anheuser-Busch, LLC,
  553 F. Supp. 3d 83 (S.D.N.Y. 2021)................................................................... 21

DeCoursey v. Murad, LLC,
  673 F. Supp. 3d 194 (N.D.N.Y. 2023)......................................................... *passim*

DeMarco v. DNVB, Inc.,
  No. 1:25-CV-3076-GHW, 2026 WL 203742
  (S.D.N.Y. Jan. 26, 2026)...................................................................................... 27

duPont Glore Forgan, Inc. v. Arnold Bernhard & Co.,
  73 F.R.D. 313 (S.D.N.Y. 1976) .......................................................................... 42

Duran v. Henkel of Am., Inc.,
  450 F. Supp. 3d 337 (S.D.N.Y. 2020).......................................................... 18, 20

Elias v. Ungar's Food Products, Inc.,
  252 F.R.D. 233 (D.N.J. 2008).............................................................................. 33

F.D.I.C. v. U.S. Mortg. Corp.,
  132 F. Supp. 3d 369 (E.D.N.Y. 2015) ................................................................ 30

Funk v. Kaiser-Frazer Sales Corp.,
  258 N.Y.S.2d 553 (2d Dep't 1965)...................................................................... 33

Goldemberg v. Johnson & Johnson Consumer Companies, Inc.,
  8 F. Supp. 3d 467 (S.D.N.Y. 2014)..................................................................... 21

Gradney v. Polar Beverages,
  797 F. Supp. 3d 1016 (N.D. Cal. 2025) .............................................................. 37

Greene v. Gerber Prods. Co.,
  262 F. Supp. 3d 38 (E.D.N.Y. 2017) .................................................................. 30

v

Haas v. Brookhaven Mem'l Hosp.,
 No. 07-CV-4788 (NGG), 2008 WL 822121
 (E.D.N.Y. Mar. 26, 2008) ............................................................. 41

Hasemann v. Gerber Prods. Co.,
 331 F.R.D. 239 (E.D.N.Y. 2019) ................................................... 20

Hubbard v. Gen. Motors Corp.,
 No. 95 CIV. 4362, 1996 WL 274018
 (S.D.N.Y. May 22, 1996)............................................................... 39

In re Cohen,
 98 B.R. 179 (Bankr. S.D.N.Y. 1989).............................................. 41

J.J. v. Ashlynn Mktg. Grp., Inc.,
 No. 24-CV-00311-GPC-MSB, 2025 WL 1811854
 (S.D. Cal. July 1, 2025)................................................................. 29

Kyszenia v. Ricoh USA, Inc.,
 583 F. Supp. 3d 350 (E.D.N.Y. 2022) ...................................... 28, 29

Lebowitz v. Dow Jones & Co.,
 508 F. App'x 83 (2d Cir. 2013) ................................................. 25, 26

Levin v. Gallery 63 Antiques Corp.,
 No. 04 CV 1504 KMK, 2006 WL 2802008
 (S.D.N.Y. Sept. 28, 2006)............................................................. 39

MacNaughton v. Young Living Essential Oils, LC,
 67 F.4th 89 (2d Cir. 2023)....................................................... passim

Maroney v. Woodstream Corp.,
 695 F. Supp. 3d 448 (S.D.N.Y. 2023)....................................... 39, 40

Maroney v. Woodstream Corp.,
 No. 19-CV-8294 (KMK), 2025 WL 945874
 (S.D.N.Y. Mar. 28, 2025) ............................................................. 37

McGowan v. Fed. Hous. Auth.,
 572 F.App'x 35 (2d Cir. 2014) ...................................................... 17

Miele v. Am. Tobacco Co.,
770 N.Y.S.2d 386 (2d Dep't 2003)................................................................ 30, 31

Nicosia v. Amazon.com, Inc.,
834 F.3d 220 (2d Cir. 2016)................................................................................ 16

Oswego Laborers' Loc. 214 Pension Fund v.
Marine Midland Bank, N.A.,
85 N.Y.2d 20 (1995) .................................................................................. *passim*

Paradowski v. Champion Petfoods USA, Inc.,
No. 22-962-CV, 2023 WL 3829559
(2d Cir. June 6, 2023)........................................................................... 18, 25, 26

Pellegrino v. Procter & Gamble Co.,
No. 23-CV-10631 (KMK), 2026 WL 880573
(S.D.N.Y. Mar. 31, 2026) .................................................................................. 27

Pelman ex rel. Pelman v. McDonald's Corp.,
396 F.3d 508 (2d Cir. 2005)............................................................................... 19

Randy Knitwear, Inc. v. American Cyanamid Co.,
11 N.Y.2d 5 (1962) ................................................................................... *passim*

Richards v. Johnson & Johnson, Inc.,
No. 517CV00178BKSATB, 2018 WL 6573332
(N.D.N.Y. Dec. 13, 2018).................................................................................. 33

Rodriguez v. Hanesbrands Inc.
No. 17-CV-1612 (DLI), 2018 WL 2078116
(E.D.N.Y. Feb. 20, 2018).............................................................................. 23, 24

Schuman v. Visa U.S.A., Inc.,
788 F. Supp. 3d 563 (S.D.N.Y. 2025)..................................................... 18, 26, 27

Segedie v. Hain Celestial Grp., Inc.,
No. 14-CV-5029 NSR, 2015 WL 2168374
(S.D.N.Y. May 7, 2015)...................................................................................... 21

Sherkate Sahami Khass Rapol (Rapol Const. Co.) v.
Henry R. Jahn & Son, Inc.,
  701 F.2d 1049 (2d Cir. 1983)...................................................................... 39

Smith v. Adidas Am., Inc.,
  691 F. Supp. 3d 564 (N.D.N.Y. 2023)....................................................... 19, 20

Starr v. Sony BMG Music Entm't,
  592 F.3d 314 (2d Cir. 2010)......................................................................... 16

State by Abrams v. Gen. Motors Corp.,
  466 N.Y.S.2d 124 (Sup. Ct., N.Y. County 1983) ................................................. 30

Stern v. Electrolux Home Prods., Inc.,
  No. 22-CV-3679 (JMA)(ARL), 2024 WL 416495
  (E.D.N.Y. Jan. 30, 2024) ........................................................................ *passim*

Stern v. Electrolux Home Prods., Inc.,
  No. 22-CV-3679 (JMA) (ARL), 2024 WL 4297656
  (E.D.N.Y. Sept. 26, 2024)......................................................................... *passim*

Stern v. Electrolux Home Prods., Inc.,
  No. 24-CV-8204-SJB-ARL, 2026 WL 772615
  (E.D.N.Y. Mar. 19, 2026) ......................................................................... *passim*

Telit Wireless Sols., Inc. v. Axesstel, Inc.,
  No. 15-CV-5278 (KBF), 2016 WL 1587246
  (S.D.N.Y. Apr. 18, 2016)................................................................................ 40

Tomasino v. Estee Lauder Companies Inc.,
  44 F. Supp. 3d 251 (E.D.N.Y. 2014) ......................................................... 38, 39

Williams v. Citigroup Inc.,
  659 F.3d 208 (2d Cir. 2011)............................................................................ 41

**Statutes**                                                                **Pages**

28 U.S.C. § 1291 ............................................................................................ 1

28 U.S.C. § 1332(d)(2)..................................................................................... 1

N.Y. Gen. Bus. Law § 349 ....................................................................... *passim*

N.Y. Gen. Bus. Law § 349(a) ................................................................... 17

N.Y. Gen. Bus. Law § 349(h) ................................................................... 18

N.Y. Gen. Bus. Law § 350 ....................................................................... *passim*

N.Y. U.C.C. § 1–204(2) ........................................................................... 39

N.Y. U.C.C. § 2-313(1)(a) ....................................................................... 32

N.Y. U.C.C. § 2-607(3)(a) ....................................................................... 38

**Rules**                                                    **Pages**

Fed. R. Civ. P. 12(b)(6) ........................................................................... *passim*

Fed. R. Civ. P. 15 ................................................................................... 41

Fed. R. Civ. P. 15(a)(2) ........................................................................... 41

Fed. R. App. P. 32(a)(5) ........................................................................... 43

Fed. R. App. P. 32(a)(6) ........................................................................... 43

Fed. R. App. P. 32(a)(7)(B) ..................................................................... 43

Fed. R. App. P. 32(f) ............................................................................... 43

Fed. R. App. Pro. 32(g) ........................................................................... 43

2d Cir. R. 32.1(a)(4)(A) ........................................................................... 43

**Other Authorities**                                      **Pages**

N.Y. U.C.C. § 2–607, cmt. 4 ................................................................... 38

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this putative class action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), as the proposed class contains more than 100 members, minimal diversity exists between at least one class member and the Defendant, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. See JA-403, ¶ 14.[1]

The District Court entered a Final Judgment on March 20, 2026. See SPA-17. Plaintiff-Appellant David Stern timely filed a Notice of Appeal on April 16, 2026. See JA-551. This Court has jurisdiction under 28 U.S.C. § 1291.

---

[1] "JA__" refers to the parties' Joint Appendix. "SPA__" refers to the Special Appendix, which can be found following Plaintiff's brief.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Whether the District Court erred by dismissing Plaintiff's misrepresentation-based claims brought pursuant to §§ 349 – 350 of New York's General Business Law (the "GBL") by finding as a matter of law on a Rule 12(b)(6) motion to dismiss that Defendant's SpaceWise advertisement was not materially misleading to consumers because it does not concern the quality or durability of the product.

2.      Whether the District Court erred by dismissing Plaintiff's omission-based claims brought pursuant to §§ 349 – 350 of the GBL by finding that Plaintiff failed to demonstrate that Defendant Electrolux had exclusive knowledge of the Defect and that the online complaints incorporated into Plaintiff's pleading establish that he could have discovered the Defect himself.

3.      Whether the District Court erred by dismissing Plaintiff's claim for fraudulent concealment/nondisclosure based on its holding that the allegations incorporated into Plaintiff's pleading of customers' complaints regarding the Defect demonstrate that Electrolux did not have exclusive or superior knowledge of the Defect and that information about the Defect was readily available to Plaintiff.

4.      Whether the District Court erred by dismissing Plaintiff's negligent misrepresentation claim by finding as a matter of law that Defendant's SpaceWise

2

advertisement does not concern the quality or durability of the subject shelves and drawers.

5.      Whether the District Court erred by dismissing Plaintiff's breach of express warranty claim for lack of privity.

6.      Whether the District Court erred by dismissing Plaintiff's breach of express and implied warranty claims for failure to timely file pre-suit notice.

7.      Whether the District Court erred by dismissing Plaintiff's claims with prejudice and not providing Plaintiff with an opportunity to file an amended pleading.

## STATEMENT OF THE CASE

### A. Factual Background

This is a consumer class action arising from a uniform, latent defect in the drawers and shelving of Defendant-Appellee Electrolux Home Products, Inc.'s ("Electrolux" or "Defendant") side-by-side Frigidaire Gallery refrigerators. Plaintiff-Appellant David Stern ("Plaintiff" or "Stern") alleges that the shelves and drawers—components Electrolux affirmatively marketed as a "flexible organization system"—are manufactured with inadequate strength and stiffness, causing them to crack, break, and fall apart within months of purchase, long before the end of the appliances' expected useful life.

Electrolux is one of the world's leading manufacturers of refrigerators and other appliances. JA-404, ¶ 18. It sells high-end refrigerators through major retail stores such as Best Buy and Lowes, as well as smaller home appliances, such as Plesser's, to consumers throughout the United States. Id. Electrolux has designed, manufactured, warranted, marketed, advertised, and sold several product lines of refrigerators. Id. Its refrigerators are available in three varieties: (1) French door with bottom freezer, (2) side-by-side, and (3) the "all refrigerator" style. Id.

Electrolux uniformly markets its refrigerators as highly rated, top-of-the-line appliances. Id., ¶ 19. For example, Electrolux touts special features such as CrispSeal® Plus Crisper "to help prevent produce from spoiling: advanced

4

CrispSeal® Plus keeps produce fresh with a seal that blocks out dry air, plus an added filter reduces the gas that causes produce to ripen faster," and the "EvenTemp™ Cooling System" to "keep your food fresh and reduce freezer burn with our variable speed compressor that reacts quickly to temperature fluctuations and constantly circulates cold air throughout the fresh food and freezer compartments" Id.

Electrolux also marketed the refrigerators through its registered SpaceWise® Organization System, representing that the refrigerator lets the buyer "Find a place for everything with our flexible organization system, **including three removable glass shelves**, adjustable gallon door bin, and a slim design ice maker that holds 9 pounds of ice without taking up valuable shelf space," (the "SpaceWise Advertisement"). Id. (emphasis added). Moreover, on its website for its Frigidaire Gallery collection, it states, "Experience the ultimate in flexibility with over 100 ways to organize," and "Make room for all of your items **with our edge-to-edge Flip-Up and Slide-Under shelves,** and over 100 ways to customize." JA-405, ¶ 20 (emphasis added). See also JA-448, ¶¶ 146-147. Stern alleges that he recalls seeing the SpaceWise Advertisement on Electrolux's website while doing research for a new refrigerator only days before he purchased the refrigerator, and again in Plesser's when he was inspecting the refrigerator and that he relied on that representation in purchasing the appliance. JA-406, ¶ 33.

5

Unfortunately, Plaintiff and the Class have not experienced the storage benefits in their refrigerators as advertised by Electrolux. This is because the Electrolux refrigerators are designed and manufactured with a uniform and inherent design and/or manufacturing defect that causes the refrigerators to have faulty shelves and drawers which are very flimsy and repeatedly crack, break and fall apart as early as within months of purchase (the "Defect"). JA-400-01, ¶¶ 1, 4. Indeed, consumers, including Plaintiff, have been repeatedly complaining to Electrolux about this Defect for years, as evidenced by the many online complaints. JA-413-31, ¶¶ 64-66. The Defect is not Stern's lay opinion. A Professor of Mechanical Engineering at the Massachusetts Institute of Technology, Martin Culpepper, inspected and tested Stern's refrigerator and concluded that "[i]t is highly likely that the failures in the shelves are due to a lack of appropriate strength and stiffness," that the design was, "in layman's terms quite flimsy," and that the flaw was "[e]asily foreseeable/knowable" and "[e]asily prevented" using "ubiquitous engineering tools and best engineering practices." JA-408, ¶¶ 41-42.

The Defect was a known issue to Electrolux at or about the time it began distributing the refrigerators containing the Defect. JA-410, ¶¶ 49-51, 53; JA-412, ¶ 60. In fact, Electrolux has been selling replacement shelf frames since 2010. JA-410, ¶¶ 52-53. Electrolux knew about the Defect in various ways. For example, Electrolux uses online software to track warranty claims which provides Electrolux with the

ability to mine data for strategic information about its products and the nature of repair claims. JA-411, ¶ 55. Electrolux also received warranty claims for broken shelves and drawers in its side-by-side refrigerators years before Plaintiff purchased his refrigerator. Id., ¶ 56. Electrolux received numerous warranty claims each year related to shelves and drawers or bins breaking and falling off or collapsing in its side-by-side refrigerators for years before Plaintiff purchased his refrigerator. Id. Indeed, Electrolux received so many complaints that it developed a shelf repair kit as early as 2012, that they made available to Electrolux service providers. Id., ¶ 57. In January 2012, it also issued an Electrolux Service Flash detailing a problem of baskets and drawers falling off the rails in the freezer section of Electrolux's side by side refrigerators. Id., ¶ 58. See also JA-394. The Defect described in the Electrolux Service Flash is the Defect which Plaintiff and class members experienced with the shelves, baskets, and bins in the refrigerator portion of the side-by-side refrigerators. JA-411, ¶ 58.

As further evidence that Electrolux has known about the Defect, on February 8, 2024, Electrolux recalled Frigidaire Side-by-Side refrigerators with "slim ice buckets", including the model purchased by Plaintiff (the "Recall"). JA-431, ¶ 67. See also JA-188. The "Hazard" described as the reason for the Recall is that "The recalled refrigerators contain an ice bucket assembly component that can break, resulting in plastic pieces entering the ice bucket, posing choking and laceration

hazards to consumers if the pieces are dispensed out of the ice bucket." JA-431, ¶ 67. See also JA-188.

Despite all the foregoing, Defendant failed to disclose the Defect to its customers. JA-410, ¶¶ 49-51, 53; JA-412, ¶ 60. Not only did Electrolux fail to disclose the Defect, it continued to market the affected refrigerators and doubled down on the refrigerators' storage ability and flexibility by advertising its SpaceWise® features in its SpaceWise Advertisement. JA-412, ¶ 61. Even with Electrolux's institutional knowledge and awareness of the Defect, it has failed to successfully address the Defect. Because consumers are left with refrigerators that cannot perform their essential function of storage of food, many consumers resort to purchasing new shelves or drawers online or, like Plaintiff here, building his own shelves out of wood. JA-408, ¶ 40.

## B. **Plaintiff's Purchase Of A Defective Refrigerator**

On November 29, 2019, Plaintiff purchased for personal and family use a new Frigidaire Gallery 22.2 Cu. Ft. Counter-depth Side–by-Side Refrigerator-Stainless Steel (model number FGSC2335TF) containing the Defect from Plesser's Appliance in Babylon, New York for approximately $999.00. JA-406, ¶ 30. The refrigerator was not delivered and installed until February 2020. Id., ¶ 31. Within six to nine months, the three shelves that have drawers underneath them in Plaintiff's

8

refrigerator began breaking. JA-407, ¶ 35. The shelves could no longer support the plastic drawers. Id.

In October 2021, Plaintiff contacted Electrolux Customer Care through their online complaint form and through their online chat system and informed them that every shelf with a drawer had broken and the middle drawer also cracked as a result of the failing shelf. Id., ¶ 36. Plaintiff requested that Electrolux replace the broken shelves and drawers but, unfortunately, Electrolux never responded to Plaintiff's complaints. Id. Because Electrolux was not responsive, on October 29, 2021, Stern emailed customer service at Plesser's Appliances. Id., ¶ 37. Stern emailed the following to Plesser's customer service:

> Every shelf with a drawer has broken. It's evident that the thin design and poor quality plastic is not capable of lasting more than a short time. In addition to the shelves, the middle draw has also cracked as a result of the failing shelf. I ask that Frigidaire replace these defective pieces however I'm worried they will not last long. We tried contacting Frigidaire but their customer service is useless
>
> …
>
> Frigidaire does not respond to our calls or emails however as a major retailer they are more likely to provide you a response.
>
> …
>
> Your suggestion of contacting Frigidaire directly is problematic since we have informed you that they don't respond to customer service.

9

Id. Plesser's responded that although the shelves broke in less than a year, he was outside the one-year warranty and therefore it was too late to utilize the warranty. Id., ¶ 38. Plaintiff resorted to constructing wood shelves to make his refrigerator functional. JA-408, ¶ 40. Even before this, the shelves that came with Plaintiff's refrigerator never would slide smoothly, as represented in advertising. Id. The wood shelving is certainly not the advertised "SpaceWise® Organization System" with smooth sliding shelving which Plaintiff relied on in purchasing his refrigerator. JA-406, ¶ 33. Had Stern known about the Defect, he would have never purchased the refrigerator or would have paid less for it. JA-448, ¶ 144.

### C. Procedural History

On June 22, 2022, Plaintiff instituted *Stern v. Electrolux Home Products, Inc.*, 22-CV-3679 (JMA) (ARL) (the "First Stern Action") in the Eastern District of New York. JA-18. On March 17, 2023, Defendant filed a motion to dismiss. JA-58. On January 30, 2024, the Hon. Arlene R. Lindsay, U.S.M.J., issued a Report and Recommendation that the District Court grant Electrolux's motion to dismiss. See JA-96; *Stern v. Electrolux Home Prods., Inc.*, No. 22-CV-3679 (JMA)(ARL), 2024 WL 416495 (E.D.N.Y. Jan. 30, 2024) ("Stern I"). On September 26, 2024, the Hon. Joan M. Azrack, U.S.D.J., adopted Judge Lindsay's Report and Recommendation and granted Defendant's motion. See JA-129; *Stern v. Electrolux Home Prods., Inc.*, No. 22-CV-3679 (JMA) (ARL), 2024 WL 4297656 (E.D.N.Y. Sept. 26, 2024)

10

("Stern II"). While denying Plaintiff's request to amend his pleading, Judge Azrack granted Plaintiff leave to refile. JA-135; Stern II, 2024 WL 4297656 at *4.

Plaintiff then filed the instant action on November 26, 2024. JA-136. On April 23, 2025, Plaintiff filed his Amended Class Action Complaint. JA-339. On May 6, 2025, Plaintiff filed his Corrected Amended Class Action Complaint (the "ACAC"). JA-400. Plaintiff asserted misrepresentation- and omission-based claims pursuant to §§ 349-350 of the GBL, negligent misrepresentation, fraudulent omission/nondisclosure, and breach of express and implied warranties.[2]

On July 31, 2025, Defendant filed its motion to dismiss. JA-512. On March 29, 2026, the Hon. Sanket J. Bulsara, U.S.D.J., issued an Opinion and Order dismissing the ACAC with prejudice. SPA-1; *Stern v. Electrolux Home Prods., Inc.*, No. 24-CV-8204-SJB-ARL, 2026 WL 772615, at *6 (E.D.N.Y. Mar. 19, 2026) ("Stern III"). On March 20, 2026, an Order of Judgment was entered. SPA-17.

On April 16, 2026, Plaintiff timely appealed Judge Bulsara's dismissal of the ACAC with prejudice. JA-551.

---

[2] Plaintiff also asserted claims for unjust enrichment and breach of the covenant of good faith and fair dealing. These two claims were previously dismissed by the District Court on June 5, 2025. See JA-7 (Text Order). Plaintiff does not appeal this ruling and these claims are not part of the instant appeal.

## SUMMARY OF THE ARGUMENT

1.      The dismissal should be reversed. At the pleading stage, the District Court was required to accept Stern's well-pleaded allegations as true and to draw every reasonable inference in his favor. It did the opposite—repeatedly resolving contested factual questions, and one unsettled question of state law, against Plaintiff.

The GBL §§ 349 and 350 claims should be reinstated. Courts in this circuit have repeatedly held that whether an advertisement is materially misleading for purposes of alleging a misrepresentation-based claim under the GBL is an issue of fact that should rarely be decided as a matter of law on a Rule 12(b)(6) motion to dismiss. The District Court, however, erroneously dismissed Plaintiff's misrepresentation-based GBL claims, based on erroneous its finding that the SpaceWise Advertisement cannot mislead a reasonable consumer because it does not concern the quality and durability of the subject shelves and drawers. Here, it is certainly plausible that a reasonable consumer acting under the same circumstances would be materially misled by Defendant's SpaceWise Advertisement because it touts maximization of space and organization through arrangement and removing of the three shelves. It necessarily follows that the shelves must obviously be of the appropriate quality and durability in order for the shelves to actually be removed and/or be used to organize foodstuffs in different ways. Accordingly, finding as a

12

matter of law that the SpaceWise Advertisement could not materially mislead a reasonable customer was incorrect.

2.     The District Court erred in dismissing Plaintiff's omission-based GBL claims. The District Court reasoned that because a handful of online reviews mentioned broken shelves, the defect was publicly available and not within Electrolux's exclusive knowledge. The existence of a few scattered consumer complaints does not establish, as a matter of law, that a reasonable consumer could readily have discovered a latent engineering defect. The Court erred. The applicable standard only requires that Plaintiff could not have reasonably obtained the information he claims that Defendant failed to provide. Plaintiff alleged that Electrolux alone possessed materially relevant information that included internal data from monitoring direct complaints to the company, data it mines from various locations online, its warranty data, and the Electrolux's 2012 Service Flash were not disclosed, and were not publicly available.

3.     The fraudulent-concealment and negligent-misrepresentation claims fell only because the District Court deemed them derivative of the GBL claims. Because the GBL dismissal was error, the derivative dismissal cannot stand. In any event, Stern adequately pleaded Electrolux's duty to disclose based on its superior knowledge.

13

4. The District Court's dismissal of Plaintiff's breach of express warranty claim based on a lack of privity is erroneous because privity is not required. While this Court, in MacNaughton v. Young Living Essential Oils, LC, 67 F.4th 89 (2d Cir. 2023), found that privity is required, this directly conflicts with a decision of the New York Court of Appeals. See Randy Knitwear, Inc. v. American Cyanamid Co., 11 N.Y.2d 5, 12 (1962). Subsequent cases have held that while federal courts must ordinarily follow the decisions of the Second Circuit, this is not the case where, as here, a case asserts state law claims and is based on diversity jurisdiction because the ultimate source for state law adjudication in diversity cases is the law as established by the constitution, statutes, or authoritative court decisions of the state.

5. The District Court's dismissal of Plaintiff's breach of express and implied warranty claims based on its finding as a matter of law that Plaintiff's failure to timely file pre-suit notice is also erroneous because this is a disputed issue of material fact that should not be decided on a Rule 12(b)(6) motion to dismiss. Whether pre-suit notice is timely should only be decided as a matter of law on a motion to dismiss if only one inference may be drawn as to the timeliness of the notice. This is not such a case. Stern alleged that he notified Electrolux of the breach and that Electrolux refused to honor the warranty—notice that, at the pleading stage, suffices. Additionally, the District Court overlooked the fact that, under New York law, the filing of a complaint can itself supply the required notice.

15

6.      The District Court erred by dismissing Plaintiff's pleading with prejudice and without providing Plaintiff leave to amend. The District Court made factual findings and determined that Plaintiff failed to adequately plead facts to support its causes of action. Leave to amend should have been granted, which would have allowed Plaintiff to resolve the purported deficiencies found by the District Court.

<b><u>ARGUMENT</u></b>

## I.  STANDARDS OF REVIEW

This Court "review[s] *de novo* the dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations as true, and drawing all reasonable inferences in the plaintiff's favor." <u>Nicosia v. Amazon.com, Inc.</u>, 834 F.3d 220, 230 (2d Cir. 2016). Dismissals based on legal errors are also reviewed *de novo*. <u>Bascunan v. Elsaca</u>, 874 F.3d 806, 810, 825 (2d Cir. 2017).

"[R]eview [of] the denial of leave to amend a complaint [is] for abuse of discretion, unless the denial was based on an interpretation of law, in which case the legal conclusion is reviewed de novo." <u>Starr v. Sony BMG Music Entm't</u>, 592 F.3d 314, 321 (2d Cir. 2010), <u>cert. den.</u>, 562 U.S. 1168 (2011).

## II.  STANDARD GOVERNING MOTIONS TO DISMISS

A "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). The complaint need only contain sufficient facts to rise above the level of "mere possibility," and "nudge[] [a plaintiff's] claims across the line from conceivable to plausible." <u>Id.</u> at 557, 570. This standard "do[es] not require heightened fact pleading of specifics." <u>Id.</u> at 570. Plausibility requires only that a "plaintiff pleads factual content that allows the court to draw the reasonable

16

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Allegations fail to achieve plausibility when they are so devoid of any factual content so as to be nothing more than purely "speculative," "suspicio[us] and "conclusory." Twombly, 550 U.S. at 555, 557.

In evaluating a complaint on a Fed. R. Civ. P. 12(b)(6) motion, a court must operate "on the assumption that all the allegations in the complaint are true (even if doubtful in fact) … [and] even if it appears "that a recovery is very remote and unlikely."" Id. at U.S. at 555 (quotation omitted). Furthermore, courts must "draw[] all reasonable inferences in plaintiff's favor." McGowan v. Fed. Hous. Auth., 572 F.App'x 35, 36 (2d Cir. 2014).

## III. THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFF'S CLAIMS FOR VIOLATIONS OF NEW YORK'S GENERAL BUSINESS LAW

### A. Standard Governing Claims Pursuant To Sections 349 And 350 Of New York's General Business Law

"Companies have some latitude when marketing their products, but there are limits. New York State has certain laws designed to protect consumers against deception and false advertising." MacNaughton, 67 F.4th at 95. "Two such laws are … §§ 349 … and 350 [of the GBL] … which are analyzed together." Id. at 96.

GBL § 349(a) provides that "Unfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." It further provides that "any person who

17

has been injured by reason of any deceptive act or deceptive practice made unlawful by this section may bring an action." GBL § 349(h). GBL § 350, in turn, provides that "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

Stating a claim under either section, "require[s] a claimant to show that the defendant "engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."" MacNaughton, 67 F.4th at 96 (quotation omitted). See also Duran v. Henkel of Am., Inc., 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (quotation omitted) (the ""essential elements are the same"" for both sections 349 and 350). A deceptive act, for purposes of a GBL claim, also includes omissions. Paradowski v. Champion Petfoods USA, Inc., No. 22-962-CV, 2023 WL 3829559, at *2 (2d Cir. June 6, 2023). In order "[t]o plead an omission-based claim … a plaintiff must plausibly plead that they could not "reasonably have obtained the relevant information they ... claim the [defendant] failed to provide."" Schuman v. Visa U.S.A., Inc., 788 F. Supp. 3d 563, 581 (S.D.N.Y. 2025), quoting Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 27 (1995).

"A defendant's actions are materially misleading when they are likely to mislead a reasonable consumer acting reasonably under the circumstances." DeCoursey v. Murad, LLC, 673 F. Supp. 3d 194, 218 (N.D.N.Y. 2023) (quotation

18

and internal quotation marks omitted). "This test "applies an objective standard.'" Id. (quotation omitted). While a court may, "in appropriate circumstances," determine at the motion to dismiss stage whether the act at issue is misleading, "multiple courts have indicated that **such relief should rarely be granted.**" Colpitts v. Blue Diamond Growers, 527 F. Supp. 3d 562, 581 (S.D.N.Y. 2021) (emphasis added). "That is because the question of whether a representation is materially misleading "is generally a question of fact not suited for resolution at the motion to dismiss stage.'"" Id. (quotation omitted). See also, e.g., Smith v. Adidas Am., Inc., 691 F. Supp. 3d 564, 576 (N.D.N.Y. 2023) (on a motion to dismiss, "such a determination should be made sparingly").

Claims brought pursuant to GBL §§ 349 and 350 are "not subject to the pleading-with-particularity requirements of Rule 9(b) … but need only meet the bare-bones notice-pleading requirements of Rule 8(a)." Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005).

### B. The District Court Erred By Ruling That The SpaceWise Advertisement Does Not Relate To The Durability Or Quality Of The Shelves And Drawers As A Matter Of Law

The District Court dismissed Plaintiff's misrepresentation-based GBL claims by adopting Judge Lindsay's conclusory holding and ruling as a matter of law that "the statements in [Defendant's] SpaceWise ad … were not "statements relate[d] to the durability or quality of the shelves and drawers.'"" SPA-8 – 9, quoting JA-109;

19

Stern III, 2026 WL 772615 at *4, quoting Stern I, 2024 WL 416495 at *7. This is erroneous.

Initially, the District Court erred by deciding a hotly disputed issue of material fact on a motion to dismiss. Whether a defendant's actions are materially misleading is determined by an "objective standard" by looking at "whe[ther] they are likely to mislead a reasonable consumer acting reasonably under the circumstances." DeCoursey, 673 F. Supp. 3d at 218. See also, e.g., Hasemann v. Gerber Prods. Co., 331 F.R.D. 239, 258 (E.D.N.Y. 2019) ("[S]ections 349 and 350 of the GBL require that a plaintiff prove that an objective, reasonable person would likely have been deceived by the misrepresentations."). This requires looking at ""the full factual picture presented by the complaint … and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."" Smith v. Adidas Am., Inc., 691 F. Supp. 3d 564, 576 (N.D.N.Y. 2023) (quotation and internal quotation marks omitted).

As noted above, a court should only "rarely" decide whether a defendant's actions were materially misleading on a Rule 12(b)(6) motion because "**the question of whether a representation is materially misleading 'is generally a question of fact not suited for resolution at the motion to dismiss stage.'**" Colpitts, 527 F. Supp. 3d at 581 (quotation omitted, emphasis added). See also, e.g., Duran, 450 F. Supp. 3d at 346 ("this inquiry is generally a question of fact not suited for resolution

20

at the motion to dismiss stage"). As one court explained, this rule follows from the fact that "**what a reasonable consumer's interpretation might be is a matter of fact which is not appropriate for decision on a motion to dismiss.**" Ault v. J.M. Smucker Co., No. 13 CIV. 3409 PAC, 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014). See also, e.g., Buonasera v. Honest Co., Inc., 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016) ("Courts have generally held that since this second factor requires a reasonableness analysis, it cannot be resolved on a motion to dismiss."); Segedie v. Hain Celestial Grp., Inc., No. 14-CV-5029 NSR, 2015 WL 2168374, at *11 (S.D.N.Y. May 7, 2015) ("Ultimately, the question is one of reasonableness, which cannot be resolved on a Rule 12(b)(6) motion").

Numerous courts have held in analogous circumstances that courts should refrain from dismissing GBL claims. See, e.g., Id. at *10 (quotation omitted) ("Whether a reasonable consumer would be deceived by a product label is generally a question of fact not amenable to determination on a motion to dismiss."); Cooper v. Anheuser-Busch, LLC, 553 F. Supp. 3d 83, 97 (S.D.N.Y. 2021) ("[I]n most cases, the question of whether [a defendant's] labeling would prove misleading to the reasonable consumer is a question of fact that cannot be resolved on a motion to dismiss."); Goldemberg v. Johnson & Johnson Consumer Companies, Inc., 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) ("[T]he Court cannot hold as a matter of law that the product labels are not misleading to a reasonable consumer."); Buonasera, 208

21

F. Supp. 3d at 566 ("[W]hether [the labels on] [defendant's] products are misleading to a reasonable consumer is a question of fact better suited for the jury.").

Here, the ACAC plausibly alleges facts which demonstrate that a reasonable consumer would be materially misled by the SpaceWise Advertisement. The "SpaceWise® Organization System" advertised that purchasers can:

> "Find a place for everything with our flexible organization system, **including three removable glass shelves**, adjustable gallon door bin, and a slim design ice maker that holds 9 pounds of ice without taking up valuable shelf space."

JA-404, ¶ 19 (emphasis added). This is reinforced by a picture of an open refrigerator with its three removable shelves, and drawers, filled with food products:



JA-520. Presented with the foregoing, it is entirely plausible that a reasonable consumer – like Plaintiff – would have been materially misled by the SpaceWise advertisement, understanding it to be touting the quality, durability, and strength of the shelves and drawers. This naturally flows from the fact that if the shelves can be removed in order to maximize space and organization in the refrigerator, they must

22

obviously be of the appropriate quality and durability in order for the shelves to actually be removed and/or be used to organize foodstuffs in different ways.

This conclusion is supported by the many online complaints regarding the shelves' quality and durability – which may be considered for purposes of this analysis. For example, in <u>Rodriguez v. Hanesbrands Inc.</u>, plaintiffs brought a class action against defendant – which marketed and sold hosiery products – asserting violations of <u>GBL</u> §§ 349 and 350. No. 17-CV-1612 (DLI), 2018 WL 2078116, at *1 (E.D.N.Y. Feb. 20, 2018), <u>R. & R. adopted</u>, No. 17CV1612DLIRLM, 2018 WL 1686105 (E.D.N.Y. Mar. 30, 2018). One line of hosiery stated on its packaging that it is "run-resistant." <u>Id.</u> Plaintiffs alleged that defendant's representations that the product is "run resistant" are deceptive because the product is no more "run resistant" than any non-run-resistant hosiery. <u>Id.</u> Defendant moved to dismiss, arguing that plaintiffs failed to plead facts that its "run-resistant" advertisement was misleading. <u>Id.</u> at *2. The court rejected this argument – and denied the motion – concluding that it "cannot find as a matter of law that a reasonable consumer acting reasonably under the circumstances could not be misled by defendant's representations." <u>Id.</u> at *4. In support of its ruling, the court held:

> As plaintiffs persuasively argue … whether a reasonable consumer would be deceived into believing that the Products would last longer than non-run resistant hosiery is informed by **anecdotal evidence of consumers' experience** with the Products, to wit, the Amazon.com reviews cited in the Amended Complaint … **Those**

23

> **reviews plausibly show that plaintiffs were not alone in their belief as to the characteristics of the Products they purchased.**

Id. (emphasis added).

The online reviews incorporated into Plaintiff's pleading similarly demonstrate that he was not alone in his belief that the SpaceWise Advertisement touted the quality and durability of the shelves and drawers. See JA-413 – 431, ¶¶ 64-66. Thus, at the very least – construing all facts in Plaintiff's favor and granting him all reasonable inferences – what a reasonable consumer would have concluded from the SpaceWise Advertisement is a question of fact which should not have been resolved at this juncture as a matter of law.

However, even if, *arguendo*, this Court finds that whether the SpaceWise Advertisement was misleading can be determined at this juncture, the District Court applied the wrong standard. As set forth above, this analysis requires a determination whether the actions at issue "are likely to mislead a reasonable consumer acting reasonably under the circumstances." DeCoursey, 673 F. Supp. 3d at 218 (quotation omitted). The District Court, however, did not analyze what a reasonable consumer would have thought when viewing the SpaceWise Advertisement. Instead, it simply ruled in conclusory fashion that the SpaceWise Advertisement does not address the quality and durability of the shelves and drawers. SPA-9; Stern III, 2026 WL 772615 at *4. Only after – *and based on* – that conclusion did the District Court then rule

24

that a reasonable consumer would not be misled by the SpaceWise Advertisement. Id. That, however, puts the cart before the horse and therefore does not apply the correct standard.

For all these reasons, the decision of the District Court should be reversed.

### C. The District Court Erred By Dismissing Plaintiff's Omission-Based GBL Claim And Ruling That Plaintiff Could Have Discovered The Defect Himself

The District Court dismissed Plaintiff's omission-based GBL claim, finding that he "fail[ed] to demonstrate that Electrolux had exclusive knowledge of the defect" and that the online complaints "establish that Stern could have discovered the defect himself." SPA-10 – 11; Stern III, 2026 WL 772615 at *4. This is erroneous.

First, the applicable standard does not require that the manufacturer have *exclusive* knowledge. The District Court relied on Paradowski, which provides that when a GBL violation is based on an omission, the plaintiff "must show that [1] "the business alone possesses material information that is relevant to the consumer and fail[ed] to provide this information," or [2] that plaintiffs could not "reasonably have obtained the relevant information they now claim the [defendant] failed to provide."" 2023 WL 3829559, at *2 quoting Oswego, 85 N.Y.2d at 26-27. See SPA-7; Stern III, 2026 WL 772615 at *3. See also Lebowitz v. Dow Jones & Co., 508 F. App'x 83,

25

85 (2d Cir. 2013) (relying on <u>Oswego</u> for the same conclusion). However, that is not actually the standard set forth in <u>Oswego</u>. Rather, what <u>Oswego</u> held was that:

> In the case of omissions in particular—the subject of the present case—the statute surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation. The scenario is quite different, however, where the business alone possesses material information that is relevant to the consumer and fails to provide this information.

<u>Oswego</u>, 85 N.Y.2d at 26. <u>Oswego</u>, thus, does not limit omission-based claims to the narrow situation where all the relevant information is in a defendant's exclusive possession.

Cases subsequent to <u>Paradowski</u> and <u>Lebowitz</u> have come to this exact conclusion. For example, in <u>Schuman</u> – based on the portion of <u>Oswego</u> just quoted – the court ruled:

> **The Court does not read *Oswego Laborers* as limiting omission-based claims to only those where the omitted information is in the defendant's exclusive possession.** *Lebowitz*, 508 F. App'x at 85. The *Oswego Laborers* court did note that Section 349 "surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information," **but it did not go so far as to say *no* information outside of a business's exclusive possession could ever give rise to an omission-based claim.** 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741. **The court merely identified the failure to provide information in one's exclusive possession as one "scenario" that may give rise to an omission-based claim.** *See id.* at 26–27, 623 N.Y.S.2d 529, 647 N.E.2d

> 741. That is how New York's intermediate courts appear to have interpreted *Oswego Laborers*—as explaining that "[o]mission-based claims are *appropriate* 'where the business alone possesses material information ... and fails to provide [it],' " but not that they are limited to such scenarios. *Gomez-Jimenez*, 956 N.Y.S.2d at 58 (quotation omitted); *accord Krobath*, 115 N.Y.S.3d at 392.

788 F. Supp. 3d at 581 (bold added). Accordingly, the <u>Schuman</u> court ruled that "[t]o plead an omission-based claim under Section 349, a plaintiff must plausibly plead that they could not "reasonably have obtained the relevant information they ... claim the [defendant] failed to provide."" <u>Id.</u> at 582, <u>quoting</u> <u>Oswego</u>, 85 N.Y.2d at 27. <u>See</u> <u>also</u> <u>Pellegrino v. Procter & Gamble Co.</u>, No. 23-CV-10631 (KMK), 2026 WL 880573, at *18-*19 (S.D.N.Y. Mar. 31, 2026) ("[D]ismissing Plaintiffs' omission-based claims based on Defendant's argument that the March 2021 Consumer Lab Report made the information discoverable by a reasonable consumer would be inappropriate without development of a full factual record"); <u>DeMarco v. DNVB, Inc.</u>, No. 1:25-CV-3076-GHW, 2026 WL 203742, at *5 and n.4 (S.D.N.Y. Jan. 26, 2026).

Here, Plaintiff could not have obtained the relevant information regarding the Defect. Electrolux's internal data from monitoring direct complaints to the company and mining data from various locations online, its warranty data, and its 2012 Service Flash were not publicly available. JA-411 – 412, ¶¶ 54-59. Notably, the District Court never even considered how the warranty data, the 2012 Service Flash,

27

and Electrolux's development of a repair kit – all of which were not publicly available – support the fact that Plaintiff could not have obtained the relevant information. SPA-10 – 11. Instead, the District Court focused exclusively on the online complaints. Id. However, while Plaintiff did allege that complaints regarding the Defect were made online, these too do not prove that Plaintiff could have obtained knowledge of the Defect for purposes of GBL claims. JA-413 – 431, ¶¶ 64-66. This is because disparate online complaints are not sufficient to demonstrate reasonable obtainability sufficient to undermine an omission-based GBL claim.

For example, in Kyszenia v. Ricoh USA, Inc., 583 F. Supp. 3d 350, 356-57 (E.D.N.Y. 2022), plaintiffs brought a class action against a camera manufacturer, alleging an aperture defect. Defendant moved to dismiss plaintiffs' omission-based GBL claim, arguing that plaintiffs' allegations regarding customer complaints and posts online regarding the aperture defect demonstrated that the relevant information was not possessed by it alone but was known to the public. Id. at 360. The court rejected this argument, ruling that:

> While the plaintiffs' allegations about public discussion of the aperture issue … tend to undercut and render implausible a claim that the defendant alone possessed this information, the absence of that showing is not fatal to the plaintiffs' claims … an omission can still be actionable where it is shown that "a consumer could not reasonably obtain" the omitted information … **The fact that there were complaints about the aperture issue on a handful of websites does not show that consumers were entirely capable of discovering the information on their own.**

28

Id. (emphasis added). See also, e.g., J.J. v. Ashlynn Mktg. Grp., Inc., No. 24-CV-00311-GPC-MSB, 2025 WL 1811854, at *13 (S.D. Cal. July 1, 2025), rec. den., No. 3:24-CV-00311-GPC-MSB, 2025 WL 2939532 (S.D. Cal. Oct. 16, 2025) (ruling that "scattered public discussion" are not sufficient, at the pleading stage, to demonstrate that consumers can reasonably obtain the relevant information).

For all these reasons, the decision of the District Court should be reversed.

## IV. THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFF'S CLAIM FOR FRAUDULENT CONCEALMENT/NONDISCLOSURE

"To properly plead a cause of action for fraud, a plaintiff must allege all of the following requisite elements: (1) the defendant made a misrepresentation or a material omission of fact which was false and which the defendant knew to be false; (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it; (3) the plaintiff justifiably relied on the misrepresentation or material omission; and (4) injury." Bannister v. Agard, 5 N.Y.S.3d 114, 115 (2d Dep't 2015). "To sustain a cause of action for fraudulent concealment, the plaintiff must further allege a fifth element, namely, that the defendant had a duty to disclose the material information." Id.

"A duty of disclosure generally arises in three circumstances: (i) the parties are in a fiduciary or confidential relationship; (ii) one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the

29

other party; and (iii) one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." F.D.I.C. v. U.S. Mortg. Corp., 132 F. Supp. 3d 369, 383 (E.D.N.Y. 2015). "Thus, with respect to the duty to disclose, "New York recognizes a cause of action to recover damages for fraud based on concealment, where the party to be charged has superior knowledge or means of knowledge, such that the transaction without disclosure is rendered inherently unfair."" Greene v. Gerber Prods. Co., 262 F. Supp. 3d 38, 72 (E.D.N.Y. 2017) (quotation omitted). See also, e.g., State by Abrams v. Gen. Motors Corp., 466 N.Y.S.2d 124, 127 (Sup. Ct., N.Y. County 1983) ("If one party has superior knowledge or has a means of knowledge not available to both parties, then he is under a legal obligation to speak and silence would constitute fraud."). This is equally applicable when the claim is asserted against an indirect manufacturer. See Miele v. Am. Tobacco Co., 770 N.Y.S.2d 386, 391 (2d Dep't 2003) (addressing claims against manufacturer of cigarettes).

The District Court dismissed Plaintiff's claim for fraudulent concealment/nondisclosure, ruling that it "fails for the same reason [the] omission-based GBL claim fails – Stern's own allegations demonstrate Electrolux did not have exclusive or superior knowledge of the defect … Information about the defect was readily available to Stern [and] his Amended Complaint includes reviews posted publicly." SPA-13; Stern III, 2026 WL 772615 at *5. This is erroneous.

30

Regardless of whether Electrolux had "exclusive or superior knowledge of the defect," id., they certainly had "superior … means of knowledge" based on their internal data from monitoring direct complaints to the company, mining data from various locations online, as well as its warranty data. Miele, 770 N.Y.S.2d at 391. Accordingly, this standard is satisfied. Additionally, as set forth above, supra, § III(C), merely because there were complaints online does not mean that Plaintiff could have obtained knowledge of the defect.

For all the foregoing reasons, the decision of the District Court should be reversed.

## V. THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFF'S CLAIM FOR NEGLIGENT MISREPRESENTATION

To sufficiently plead a claim for negligent misrepresentation, a plaintiff must allege that "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." Anschutz Corp. v. Merrill Lynch & Co., Inc., 690 F.3d 98, 114 (2d Cir. 2012). The District Court dismissed the claim solely because it had found no misrepresentation in connection with the GBL claims. SPA-13; Stern III,

31

2026 WL 772615 at *5.[3] However, as set forth above, Defendant's SpaceWise Advertisement misrepresented to Plaintiff – and other consumers – that the shelves and drawers are purposed to provide a flexible organizational system in the refrigerators, which necessarily requires that they will be of the appropriate quality and durability in order for the shelves to actually be removed and/or be used to organize foodstuffs in different ways. Once the SpaceWise® misrepresentation is properly credited, the District Court's rationale for dismissing this claim collapses.

For all the foregoing reasons, the decision of the District Court should be reversed.

## VI. THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFF'S CLAIMS FOR BREACH OF THE EXPRESS AND IMPLIED WARRANTIES

### A. Standard Governing Claims For Breach Of Express Warranty

Under the UCC, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." N.Y. U.C.C. § 2-313(1)(a). It is well settled that any affirmation of fact or promise in advertising or other marketing material may become a basis of the bargain and create an express warranty. Randy Knitwear, 11 N.Y.2d at 12 (holding that

---

[3] As the District Court only addressed the second element of negligent misrepresentation, Plaintiff will not address the other elements.

32

manufacturer may be held liable under breach of warranty based on representations in advertising and mass communications in media and on labels); Funk v. Kaiser-Frazer Sales Corp., 258 N.Y.S.2d 553, 554 (2d Dep't 1965); Elias v. Ungar's Food Products, Inc., 252 F.R.D. 233, 239 (D.N.J. 2008), citing Bregman Screen & Lumber Co. v. Bechefsky, 83 A.2d 804, 806-07 (N.J. App. Div. 1951) ("As a rule, no proof of the buyer's reliance on the warranty is necessary other than that the seller's statements were of the kind which naturally would induce the purchase. The warranty need not be the sole inducement.").

""New York breach of express warranty claims require (i) a material statement amounting to a warranty; (ii) the buyer's reliance on this warranty as a basis for the contract with his immediate seller; (iii) the breach of this warranty; and (iv) injury to the buyer caused by the breach."" Babayev v. Medtronic, Inc., 228 F. Supp. 3d 192, 216 (E.D.N.Y. 2017), quoting Avola v. La.-Pac. Corp., 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013). In the context of express warranty, however, reliance "requir[es] no more than reliance on the express warranty as being a part of the bargain between the parties." Richards v. Johnson & Johnson, Inc., No. 517CV00178BKSATB, 2018 WL 6573332, at *4 (N.D.N.Y. Dec. 13, 2018). Indeed, Courts have explained that a promise is presumed to be the basis of the bargain except in extraordinary circumstances:

> It is true that courts, especially in New York, use the word "reliance" in warranty cases. In these contexts, however,

33

the word relates to the first element of proof, existence of the contract, because there can be no contract, no express warranty, without a "meeting of the minds." The question of whether the promisee "relied" on the warranty, then, is whether he believed he was purchasing the promise. As to the promisor's mental state in contract formation, it is judged "by the objective test of what his promise would be understood to mean by a reasonable man in the situation of the promisee," <u>Lee v. State Bank & Trust Co.</u>, 54 F.2d 518, 521 (2d Cir. 1931), <u>cert. denied</u>, 285 U.S. 547, 52 S.Ct. 395, 76 L.Ed. 938 (1932), as opposed to a subjective test of guilty knowledge or scienter, as in the intentional tort of fraud. Where the warranty is proved and especially where it is expressly stated in a signed writing the promisor should be allowed to disclaim "the bargain of the parties in fact as found in their language," N.Y.U.C.C. s 1-201(3) (McKinney 1964), only in an extraordinary case, such as one involving illegality or some other overriding consideration of public policy.

<u>Ainger v. Michigan Gen. Corp.</u>, 476 F. Supp. 1209, 1225 (S.D.N.Y. 1979), <u>aff'd</u>, 632 F.2d 1025 (2d Cir. 1980).

### B. The District Court Erred By Dismissing Plaintiff's Express Warranty Claim Because Privity Is Not Required

The District Court dismissed Plaintiff's express warranty claim for lack of privity with Electrolux, relying on Judge Lindsay's decision coming to the same conclusion. SPA-15, <u>citing</u>JA-118; <u>Stern III</u>, 2026 WL 772615 at *6, <u>quoting</u> <u>Stern I</u>, 2024 WL 416495 at *11. This ruling was erroneous.

In response to Defendant's motion to dismiss Plaintiff's warranty claims based on lack of privity in the First Stern Action, Plaintiff argued that privity is not required because, in <u>Randy Knitwear</u>, 11 N.Y.2d at 16, the New York court of

Appeals extended warranty protection to a sub-purchaser who justifiably relied upon representations made by the manufacturer to the public through advertising and in labels tagged to the goods themselves. Relying on MacNaughton, Judge Lindsay ruled that "[u]nder New York law, express and implied breach of warranty claims seeking to recover for financial injuries, like those here, require a showing of privity between the manufacturer and the plaintiff unless an exception applies." JA-118; Stern I, 2024 WL 416495 at *11, quoting MacNaughton, 67 F.4th at 101. Judge Lindsay rejected Plaintiff's argument, holding: "Plaintiff argues that pursuant to *Randy Knitwear, Inc. v. Am. Cyanamid Co.*, 11 N.Y.2d 5, 16, 181 N.E.2d 399, 226 N.Y.S.2d 362 (1962), decided before the enactment of the UCC, privity is not required … However, in light of the Second circuit's recent decision in *MacNaughton* that argument is unavailing." Id. As recognized by subsequent cases, however, MacNaughton does not displace Randy Knitwear where, as here, a case asserts state law claims and is in federal court based on diversity jurisdiction; in such an instance, the court is bound to apply state law as determined by the state's highest court.

By way of example, in Cohen v. Nutricost, 747 F. Supp. 3d 467, 471-72 (E.D.N.Y. 2024), plaintiff brought a putative class action pursuant to CAFA against the manufacturer of a magnesium supplement, alleging that it was impossible to fit the advertised 420 mg of magnesium as magnesium glycinate in the capsules used

35

for the product. One of Plaintiff's causes of action was for breach of express warranty. Id. at 472. Relying on MacNaughton, defendant moved to dismiss the express warranty claim because plaintiff purchased the supplements from Target rather than directly from defendant, and therefore she failed to establish privity. Id. at 481. The court rejected this argument. Id. at 481, 485.

As the Cohen court explained, the conflicting decisions of MacNaughton and Randy Knitwear have created "a split between New York appellate courts and the Second Circuit as to whether privity is a required element of a breach of express warranty claim under New York law." Id. at 482. The court then explained why it was bound to follow Randy Knitwear and not MacNaughton:

> As a general rule, a decision of the Second Circuit is "binding [on a district court] unless and until it is overruled by the [Second Circuit] *en banc* or by the Supreme Court." *Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 100–01 (2d Cir. 2021). **Diversity cases involving a state law claim present an exception to this general rule "because the ultimate source for state law adjudication in diversity cases is the law as established by the constitution, statutes, or authoritative court decisions of the state."** *Id.* **at 101. In such cases, a court is "bound to apply New York law as determined by the New York Court of Appeals even when a decision of the New York Court of Appeals conflicts with [Second Circuit] precedent."** *Id.*
>
> Here, the Second Circuit's recent decision in *MacNaughton* requiring privity for breach of express warranty claims conflicts with the New York Court of Appeals' earlier decision in *Randy Knitwear*, 11 N.Y.2d at 16, 226 N.Y.S.2d 363, 181 N.E.2d 399, dispensing with

36

the privity requirement as well as recent decisions of the New York Appellate Division confirming that privity is not required in a Section 2-313 claim alleging solely economic loss where the defendant allegedly made specific representations in advertising and sales literature upon which plaintiffs relied. *See Jesmer*, 863 N.Y.S.2d at 739, 746–47; *Murrin*, 756 N.Y.S.2d at 597; *Chenango Cnty.*, 494 N.Y.S.2d at 834; *In re E. & S. Districts Asbestos Litig.*, 772 F. Supp. 1380, 1390 (E.D.N.Y. 1991), *aff'd in part, rev'd in part sub nom. In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2d Cir. 1992) (observing that "while a federal court is not bound by lower state court decisions, they do have great weight in informing the court's prediction on how the highest court of the state would resolve the question"). **I am thus "bound to apply New York law as determined by the New York Court of Appeals."** *Glob. Reinsurance Corp. of Am.*, 22 F.4th at 100–01.

Id. at 484 (footnote omitted, emphasis added). Following Cohen, other courts have similarly ruled that in diversity cases asserting state law causes of action, privity is not required to set forth a breach of express warranty claim. See, e.g., Maroney v. Woodstream Corp., No. 19-CV-8294 (KMK), 2025 WL 945874, at *12 n.7 (S.D.N.Y. Mar. 28, 2025) ("The Court finds the reasoning of *Cohen* persuasive."); Gradney v. Polar Beverages, 797 F. Supp. 3d 1016, 1032 (N.D. Cal. 2025) (addressing N.Y. U.C.C. claim and ruling "Plaintiffs have the better argument, for the reasons articulated by the New York district court in *Cohen*").

For all the foregoing reasons, the decision of the District Court should be reversed.

37

### C. The District Court Erred By Dismissing Plaintiff's Express And Implied Warranty Claims Because Plaintiff Provided Timely Notice To Defendant

The District Court dismissed Plaintiff's express and implied warranty claims for failure to provide timely pre-suit notice of the breach. SPA-14 – 15; Stern III, 2026 WL 772615 at *6. This was erroneous.

Under New York law, a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach." N.Y. U.C.C. § 2-607(3)(a). See also, e.g., MacNaughton, 67 F.4th at 100 (quotation and internal quotation marks omitted) ("[i]n order to asse[r]t a claim for breach of an express or implied warranty under New York law, a buyer must provide the seller with timely notice of the alleged breach."). ""[R]equiring notice is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy."" Tomasino v. Estee Lauder Companies Inc., 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014), quoting N.Y. U.C.C. § 2–607, cmt. 4.

Here, Plaintiff alleged that he purchased his refrigerator on November 29, 2019, it was delivered and installed in February 2020, and that the shelves began breaking within six to nine months. JA-406 – 407, ¶¶ 30-31, 35. He notified Electrolux Customer Care in October 2021 through their online complaint form and through their online chat system informing them that every shelf with a drawer had broken and the middle drawer also cracked as a result of the failing shelf. JA-407, ¶

38

36. Plaintiff requested that Electrolux replace the broken shelves and drawers, but, unfortunately, Electrolux never responded to his online complaints. Id. The District Court found that such notice was not timely because it was 11 – 14 months after the shelves began breaking. SPA-14 and n.4; Stern III, 2026 WL 772615 at *6 and n.4. This is erroneous as it improperly resolves a hotly disputed issue of material fact at the motion to dismiss stage.

"[W]hat constitutes a "reasonable time" for taking an action "depends on the nature, purpose and[,] circumstances of such action."" Maroney v. Woodstream Corp., 695 F. Supp. 3d 448, 465 (S.D.N.Y. 2023), quoting Tomasino v. Estee Lauder Companies Inc., 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014), citing N.Y. U.C.C. § 1–204(2). Timeliness is "generally held to present [a] question[] of fact for the jury." Sherkate Sahami Khass Rapol (Rapol Const. Co.) v. Henry R. Jahn & Son, Inc., 701 F.2d 1049, 1051 (2d Cir. 1983). See also, e.g., Maroney, 695 F. Supp. 3d at 465, quoting Tomasino, 44 F. Supp. 3d at 260 (""[T]he sufficiency and timeliness of the notice is generally a question for the jury.""); Levin v. Gallery 63 Antiques Corp., No. 04 CV 1504 KMK, 2006 WL 2802008, at *19 (S.D.N.Y. Sept. 28, 2006), rec. den., 2007 WL 1288641 (S.D.N.Y. April 30, 2007) (Same); Hubbard v. Gen. Motors Corp., No. 95 CIV. 4362, 1996 WL 274018, at *4 (S.D.N.Y. May 22, 1996) (Same). The exception to this rule is extremely limited: "Where **"only one inference** may be drawn as to the reasonableness of the time ..., it becomes a question of law" that can

be resolved on a motion to dismiss." <u>Maroney</u>, 695 F. Supp. 3d at 465, <u>quoting</u> <u>Telit</u> <u>Wireless Sols., Inc. v. Axesstel, Inc.</u>, No. 15-CV-5278 (KBF), 2016 WL 1587246, at *6 (S.D.N.Y. Apr. 18, 2016) (emphasis added).

This is not a case where only one inference may be drawn as to the timeliness of Plaintiff's notice to Electrolux – especially since no discovery has been taken. Accordingly, the District Court usurped the role of the jury. What's more, the District Court overlooked the fact that, under New York law, the filing of a complaint can itself supply notice—a point of particular force in the class context. <u>See</u> <u>Bayne v. Target Corp.</u>, 630 F. Supp. 3d 544, 550 (S.D.N.Y. 2022) (quotation and internal quotation marks omitted) ("[C]ase law from New York courts is clear. In rejecting a lack of timely notice argument, the Appellate Division, Second Department explained unequivocally that the complaint and subsequent amended complaint ... themselves constituted such notice."). In the class action context it would simply be a waste of resources and time to dismiss for lack of notice because another lead plaintiff would just step up, satisfy pre-suit notice and file on behalf of the class again: "The reasoning is especially persuasive in the context of a putative class action where, as here, the failure to provide pre-suit notice could easily be circumvented by having plaintiffs' counsel (no doubt the driver of this litigation) find a new named plaintiff who will provide perfunctory notice before commencing another suit. To require pre-suit notice as a condition precedent to bringing a claim

40

would thus result in a waste of resources and would promote form over function. Id. at 550 n.7.

For all the foregoing reason, the decision of the District Court should be reversed.

**VII. THE DISTRICT COURT ERRED BY RULING THAT ANY DISMISSAL OF PLAINTIFF'S CLAIMS SHOULD BE WITH PREJUDICE, AND THAT PLAINTIFF SHOULD NOT BE PROVIDED WITH AN OPPORTUNITY TO FILE AN AMENDED PLEADING**

"[C]ourts should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(a) contains a "liberal amendment policy," and "[t]his permissive standard is consistent with our "strong preference for resolving disputes on the merits.'" Williams v. Citigroup Inc., 659 F.3d 208, 212–13 (2d Cir. 2011) (citations omitted).

Here, the District Court found that Plaintiff failed to properly plead its various causes of action and dismissed the ACAC with prejudice. This was error. Plaintiff should have been provided the opportunity to file an amended pleading. See, e.g., In re Cohen, 98 B.R. 179, 182 (Bankr. S.D.N.Y. 1989) ("a complaint may be amended… even after it had been dismissed for failure to state a claim… [and] even if the proposed amendment will substantially change the claim or defense, or add a different claim or defense, leave to amend will not be denied on such grounds alone"); Haas v. Brookhaven Mem'l Hosp., No. 07-CV-4788 (NGG), 2008 WL 822121, at *1 (E.D.N.Y. Mar. 26, 2008) (citation omitted) ("If a liberal reading of

41

the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the Complaint"); duPont Glore Forgan, Inc. v. Arnold Bernhard & Co., 73 F.R.D. 313, 314 (S.D.N.Y. 1976) ("a motion to amend the complaint should be freely granted unless prejudice to other parties will result").

## CONCLUSION

For all the foregoing reasons, the decision of the District Court should be reversed.

Respectfully submitted,

BY: s/ Bruce H. Nagel
BRUCE H. NAGEL
Attorneys for Plaintiff-Appellant
David Stern
103 Eisenhower Parkway
Roseland, NJ 07068
(973) 618-0400
bnagel@nagelrice.com

Dated: June 8, 2026

42

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1. I, Bruce H. Nagel, counsel to Plaintiff-Appellant David Stern, and a member of the Bar of this Court, certify pursuant to Fed. R. App. Pro. 32(g) that this document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) and the word limit of 2d Cir. R. 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 9,546 words, including 23 words manually counted in any visual image.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in 14-point Times New Roman.

BY: s/ Bruce H. Nagel
BRUCE H. NAGEL
Attorney for Plaintiff-Appellant
David Stern

Dated: June 8, 2026

SPECIAL APPENDIX

## <u>TABLE OF CONTENTS</u>

Order and Opinion dismissing Plaintiff's
Corrected Amended Class Action
Complaint with prejudice,
     Dated: March 19, 2026 ................................................................. SPA-1

Order of Judgment,
     Dated: March 20, 2026 ............................................................... SPA-17

# SPA-1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DAVID STERN,
*On behalf of himself and all other persons
similarly situated,*

       Plaintiff,

   v.

ELECTROLUX HOME PRODUCTS, INC.,

       Defendant.
-----------------------------------------------------------------X

**MEMORANDUM
AND ORDER**
24-CV-8204-SJB-ARL

**BULSARA, United States District Judge:**

Plaintiff David Stern ("Stern") commenced this consumer class action against Defendant Electrolux Home Products, Inc. ("Electrolux"), based on allegedly defective drawers and shelving in certain refrigerator models manufactured by Electrolux, one of which he purchased. (Compl. dated Nov. 26, 2024, Dkt. No. 1 ¶ 1). In the operative pleading, Stern's Amended Complaint filed on May 6, 2025, he asserts the following claims on behalf of the putative class: violations of New York General Business Law ("GBL") §§ 349 and 350, fraudulent concealment and nondisclosure, breach of express and implied warranties, unjust enrichment, negligent misrepresentation, and breach of the duty of good faith and fair dealing. (Am. Compl., Dkt. No. 24 ¶¶ 107–68). Electrolux has moved to dismiss all the claims. (Def.'s Mot. to Dismiss dated June 26, 2025 ("Def.'s. Mot."), Dkt. No. 33-1). For the reasons explained below, Electrolux's motion is granted.

# SPA-2

<u>STANDARD OF REVIEW</u>

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (quotations omitted). In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations omitted). The determination of whether a party has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

This pleading requirement "does not impose a probability standard at the motion-to-dismiss stage." *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 156 F.4th 68, 77 (2d Cir. 2025) (noting that plausibility does not equate to probability). And "on a Rule 12(b)(6) motion it is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives. Assuming that [plaintiff] can adduce sufficient evidence to support its factual allegations, the choice between or among

2

# SPA-3

plausible interpretations of the evidence will be a task for the factfinder." *Id.* (quotations omitted).

For the purpose of this motion, the Court is "required to treat" the Plaintiff's "factual allegations as true, drawing all reasonable inferences in favor of [Plaintiff] to the extent that the inferences are plausibly supported by allegations of fact." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021). The Court "therefore recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the court, as we have no way of knowing at this stage what are the true facts." *Id.*

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In November 2019, Stern purchased a new Frigidaire Gallery 22.2 cubic foot counter-depth, side-by-side refrigerator for his kitchen from Plesser's Appliances in Babylon, New York. (Am. Compl. ¶ 30). The refrigerator was delivered and installed in February 2020. (*Id.* ¶ 31). Stern alleges that the drawers and shelving in the refrigerator "began breaking within six to nine months of purchase." (*Id.* ¶ 35).

In October 2021, Stern notified Electrolux Customer Care through their online complaint form and chat system that "every shelf with a drawer had broken and the middle drawer also cracked as a result of the failing shelf," and asked Electrolux to replace the broken shelves and drawers. (*Id.* ¶ 36). Electrolux did not respond to Stern's complaints. (*Id.*). Because Electrolux was unresponsive, Stern emailed customer service at Plesser's Appliances on October 29, 2021. (*Id.* ¶ 37). Plesser's told Stern he

3

# SPA-4

was outside of the one-year warranty period, and it was too late to utilize the warranty. (Am. Compl. ¶ 38).

Stern alleges that Electrolux "misrepresented and omitted material information regarding the [refrigerator] and/or its packaging by failing to disclose known defects and risks to a significant portion of targeted consumers who, acting reasonably in the circumstances, were misled." (*Id.* ¶ 114). Specifically, he alleges that "Electrolux uniformly markets its refrigerators as highly rated, top-of the-line appliances," (*id.* ¶ 19), and that Electrolux represented that the refrigerators were "free from defects," (*id.* ¶ 79). He also alleges that several advertisements for the refrigerator — including advertisements for its SpaceWise Organization System, CrispSeal Plus Crisper, and EvenTemp Cooling System — were false or misleading. (*See id.* ¶¶ 19–22, 34). And Electrolux knew about the defective drawers and shelving based on consumer complaints, (*id.* ¶¶ 64, 71), but "did not disclose . . . the Defect . . . at the time of sale," (Am. Compl. ¶ 78).

Prior to filing this action, Stern filed another action in this Court based on the same underlying allegations. *See* Complaint ¶¶ 1–9, 17–35, *Stern v. Electrolux Home Prods., Inc.*, No. 22-CV-3679 (E.D.N.Y. June 22, 2022). Following a premotion conference ("PMC") with Judge Azrack, Electrolux moved to dismiss Stern's Complaint. Defendant's Motion to Dismiss, *Stern v. Electrolux Home Prods., Inc.*, No. 22-CV-3679 (E.D.N.Y. Mar. 17, 2023). Judge Azrack referred the motion to Judge Lindsay for a report and recommendation. Order, *Stern v. Electrolux Home Prods., Inc.*, No. 22-CV-3679 (E.D.N.Y. Nov. 1, 2023). On January 30, 2024, Judge Lindsay issued a report and

# SPA-5

recommendation recommending that the Court grant Electrolux's motion to dismiss, *Stern v. Electrolux Home Prods., Inc.*, No. 22-CV-3679, 2024 WL 416495 (E.D.N.Y. Jan. 30, 2024), which Judge Azrack adopted, *Stern v. Electrolux Home Prods., Inc.*, No. 22-CV-3679, 2024 WL 4297656 (E.D.N.Y. Sep. 26, 2024). Misapprehending Judge Azrack's Order, which granted Stern leave to refile a motion to amend, *see id.* at *4, Stern instead filed a new case, (*see* Pl.'s Opp'n to Def.'s Mot. for PMC dated Feb. 14, 2025, Dkt. No. 21 at 2).[1]

Following the opening of this new case, Electrolux requested a PMC to dismiss Stern's Complaint. (Def.'s Mot. for PMC dated Feb. 7, 2025, Dkt. No. 18). The Court held a PMC on March 24, 2025, and granted Stern leave to amend his complaint to cure the various deficiencies identified by Judge Azrack and Judge Lindsay. (Min. Entry dated Mar. 25, 2025). Along with the Amended Complaint, the Court directed Stern to file a letter explaining why the Amended Complaint cures the previously identified deficiencies and permitted Electrolux to file a letter in response. (*Id.*). After reviewing the letter submissions, the Court dismissed Stern's claims for unjust enrichment and breach of the duty of good faith and fair dealing with prejudice—based on Stern's failure to revive these claims, which Judge Azrack and Judge Lindsay deemed duplicative and subject to dismissal in the prior case, in his letter—and directed the parties to full briefing on the remaining claims. (Order dated June 5, 2025). Defendants now seek dismissal of Stern's remaining claims for violations of GBL §§ 349 and 350,

---

[1] Despite this error, the parties do not dispute that the decision in the prior, now closed, case remains part of the present case.

# SPA-6

fraudulent concealment and nondisclosure, breach of express and implied warranties, and negligent misrepresentation.  (Def.'s Mot. at 4–10).

DISCUSSION

## I.    New York General Business Law Claims

GBL Section 349 "provides that '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] are . . . unlawful.'"  *Venticinque v. Back to Nature Foods Co., LLC*, No. 23-1236, 2024 WL 3385136, at *1 (2d Cir. July 12, 2024) (quoting N.Y. Gen. Bus. Law § 349(a)).  And Section 350 "prohibits '[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service.'"  *Id.* (quoting N.Y. Gen. Bus. Law § 350).  To state a claim under these statutes, a plaintiff must "show that the defendant engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 96 (2d Cir. 2023) (quotation omitted).  "Deceptive acts are acts that are likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (quotation omitted).  "[I]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."  *Id.* (quotation omitted).

An omission may also be a deceptive act for purposes of a GBL claim.  *See Paradowski v. Champion Petfoods USA, Inc.*, No. 22-0962, 2023 WL 3829559, at *2 (2d Cir. June 6, 2023) ("When evaluating whether an act was deceptive or misleading, New York

6

# SPA-7

courts apply an objective standard, asking whether the *representation or omission* is likely to mislead a reasonable consumer acting reasonably under the circumstances." (emphasis added) (quotation omitted)). "[A] plaintiff bringing an omission-based claim for § 349 liability must show that 'the business alone possesses material information that is relevant to the consumer and fail[ed] to provide this information,' or that plaintiffs could not 'reasonably have obtained the relevant information they now claim the [defendant] failed to provide.'" *Id.* (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26–27 (1995)). Stern fails to plausibly allege materially misleading conduct — or a deceptive act — by Electrolux to sustain a claim under the GBL.

In terms of affirmative misrepresentations, Stern contends that "Electrolux uniformly markets its refrigerators as highly rated, top-of the-line appliances," (Am. Compl. ¶ 19), and that Electrolux represented that the refrigerators were "free from defects," (*id.* ¶ 79). Stern also refers to several advertisements promoting the features of the refrigerator. (*See id.* ¶ 19). Specifically, the Amended Complaint references advertisements for: (1) the refrigerator's SpaceWise organization system (the "SpaceWise ad"); (2) the refrigerator's CrispSeal Plus Crisper, (the "CrispSeal ad"); and (3) the refrigerator's EvenTemp Cooling System, (the "EvenTemp ad"). (*Id.*)

These allegations fail to cure the deficiencies previously identified by Judge Lindsay. As to the advertisements describing the refrigerator as "highly rated" and "top of the line," Judge Lindsay concluded that these statements were non-actionable puffery and could not provide the basis for a claim under the GBL. Nothing has

# SPA-8

changed.  *See Stern*, 2024 WL 416495, at *6; *see also B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 482 (S.D.N.Y. 2010) ("[W]hen defendants allegedly promised 'top of the line' equipment with 'topnotch output fit for a 5 star customers [sic],' they were making a 'statement of opinion' or 'commercial puffery,' which is not actionable in New York."); *Lin v. Can. Goose US, Inc.*, 640 F. Supp. 3d 349, 359 (S.D.N.Y. 2022) ("Defendant's statements describing Canadian Hutterite down as 'among the highest quality Canadian down available' amount to nonactionable puffery."); *Lee v. Mikimoto (Am.) Co.*, No. 22-CV-1923, 2023 WL 2711825, at *5 (S.D.N.Y. Mar. 30, 2023) (concluding that defendant's descriptions of product as "the finest," "the most luminous of all," and "the highest quality" were non-actionable puffery).  And as to the allegation that Electrolux "falsely represented that the Refrigerators were free from defects," Judge Lindsay concluded that Stern "failed to identify the marketing and advertising material containing this representation," and that his claims therefore lacked the facial plausibility necessary to survive a Rule 12(b)(6) motion.  *Stern*, 2024 WL 416495, at *7 (citing *Vivar v. Apple Inc.*, No. 22-CV-0347, 2022 WL 4227309, at *6 (S.D.N.Y. Sep. 12, 2022)).  Stern's Amended Complaint fails to remedy this defect.  He still identifies no advertising or other material where Electrolux represented that its refrigerators were "free from defects."  (*See* Am. Compl.).

Judge Lindsay also concluded that the statements in the SpaceWise ad—which stated that consumers could "[f]ind a place for everything with our flexible organization system, including three removable glass shelves, adjustable gallon door bin, and a slim design ice maker that holds 9 pounds of ice without taking up valuable shelf space"—

8

# SPA-9

were not "statements relate[d] to the durability or quality of the shelves and drawers." *Stern*, 2024 WL 416495, at *2, *7. Stern's additional allegations relating to the CrispSeal ad and the EvenTemp ad similarly fail to allege any misrepresentation by Electrolux about the quality of the shelves and drawers. The CrispSeal ad represented that the refrigerator had special features "to help prevent produce from spoiling," and the "advanced CrispSeal Plus keeps produce fresh with a seal that blocks out dry air, plus an added filter reduces the gas that causes produce to ripen faster." (Am. Compl. ¶ 19). Another ad touted the refrigerator's "EvenTemp Cooling system [to] keep your food fresh and reduce freezer burn with our variable speed compressor that reacts quickly to temperature fluctuations and constantly circulates cold air throughout the fresh food and freezer compartments." (*Id.*). Stern does not plausibly allege that any of the statements in these advertisements—or the SpaceWise ad—were false or misleading. Stern essentially asks the Court to read statements about the durability and quality of the drawers and shelves into the existing advertisements when they contain no such claims. The statements in the SpaceWise, CrispSeal, and EvenTemp advertisements could not possibly mislead a consumer as to the quality and durability of the shelves in Electrolux's refrigerators because the advertisements contain no statements about the shelves other than their existence. *See, e.g.*, *Turk v. Rubbermaid Inc.*, No. 21-CV-0270, 2022 WL 836894, at *7 (S.D.N.Y. Mar. 21, 2022) ("Plaintiffs do not allege that the Products' labels make any representation at all as to what temperature the Products can maintain, what temperature constitutes a food-safe temperature, or how long the Products can maintain a food-safe temperature. As such, no reasonable consumer could

9

# SPA-10

be deceived into believing that the Products would maintain a food-safe temperature for any amount of time."); *Gordon v. Target Corp.*, No. 20-CV-9589, 2022 WL 836773, at *10 (S.D.N.Y. Mar. 18, 2022) (dismissing plaintiff's GBL claims where plaintiff failed to allege any statements on the products' label that deceived consumers in the manner alleged).[2]

Ultimately, he contends that the advertisements touting the organizational and other features of the refrigerator are misleading because some of the refrigerator parts broke. This is insufficient to allege a misrepresentation by Electrolux. *See, e.g.*, *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 258–59 (E.D.N.Y. 2014) ("It is not enough to simply allege, as the plaintiff does, that the ANR products do not and cannot work, and thus the advertisements espousing their positive qualities are misleading."). Accordingly, Stern fails to allege any deceptive act or misrepresentation by Electrolux.

To the extent Stern makes an omission-based GBL claim, he fails to demonstrate that Electrolux had exclusive knowledge of the defect or that he could not have discovered the defect himself. Stern's Amended Complaint contains a series of reviews published online in support of his allegations that Electrolux was aware of the defect. (Am Compl. ¶ 64). While these reviews may establish Electrolux's knowledge of the

---

[2] Stern seemingly contends that because the specific injury he complains of — that he has "not experienced the storage benefits in [his] refrigerator advertised by Electrolux" — is related to quality and durability, his allegations are sufficient to state a GBL claim. (Pl.'s Opp'n to Def.'s Mot. to Dismiss dated July 17, 2025, Dkt. No. 33-6 at 4 (emphasis omitted)). Stern cites no authority for this proposition. That Stern's injury relates to quality and durability does not change the fact that he identifies no misrepresentations made by Electrolux, which is fatal to his GBL claims. *See Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000) ("The plaintiff . . . must show that the defendant's 'material deceptive act' caused the injury.").

defect, they also establish that Stern could have discovered the defect himself. Indeed, Stern's Complaint excerpts online reviews about the defect he complains of—the quality and durability of the shelves and drawers—that were posted well before he decided to purchase the refrigerator. (*E.g., id.* at 22–23 (reviews from September and October 2019 discussing issues with the shelves and drawers breaking)). Because Stern's own allegations demonstrate that information about the defect was publicly available and easily discoverable, he fails to state an omission-based GBL claim. *Cf. Paradowski*, 2023 WL 3829559, at *3 ("[T]he factual record establishes that a reasonable consumer could have discovered that Champion's pet foods had a material risk of containing some measurable amount of heavy metals. Because Plaintiff has failed to show that the business alone possesses this information, its § 349 claim fails." (quotation omitted)); *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 151 (S.D.N.Y. 2022) (rejecting plaintiff's omission-based GBL arguments because "Defendant clearly did not alone possess the allegedly omitted information, given that Plaintiff cites to environmental researchers, PETA, the 2017 Pulse of the Fashion Industry Report, 'industry sources,' and the United Kingdom's House of Commons Environmental Audit Committee as discussing the environmental impact of the wool industry and sheep farming").

Because Stern fails to plausibly allege a deceptive act or misrepresentation by Electrolux, his Complaint fails to state a GBL claim, and the Court dismisses those claims. *See Stutman v. Chem. Bank*, 95 N.Y.2d 24, 31 (2000) (affirming dismissal of GBL claim where "plaintiffs . . . failed to show that defendant committed a deceptive act").

11

# SPA-12

And because he has had multiple opportunities to cure these defects and failed to do so, the dismissal is with prejudice.

## II.    Fraudulent Concealment / Nondisclosure & Negligent Misrepresentation

Stern's Amended Complaint asserts claims for fraudulent concealment/ nondisclosure, (Am. Compl. ¶¶ 120–35), and negligent misrepresentation, (*id.* ¶¶ 161– 65), based on largely the same alleged misrepresentations and omissions as his GBL claims. These claims fail for the same reasons his GBL claims fail. *See, e.g.*, *Sandoval v. Uphold HQ Inc.*, No. 21-CV-7579, 2024 WL 1313826, at *6 (S.D.N.Y. Mar. 27, 2024) ("[W]here a GBL § 349 claim fails, a similarly-premised fraud claim will often also fail."); *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 584–85 (S.D.N.Y. 2021) (dismissing plaintiff's negligent misrepresentation and fraud claims after concluding plaintiff failed to state a claim under the GBL because "the failure of Plaintiffs' overarching theory of misleading business practices dooms these claims as well").

With respect to the fraudulent concealment claim, Stern must demonstrate that Electrolux had a duty to disclose the concealed information. *Harbinger Cap. Partners LLC v. Deere & Co.*, 632 F. App'x 653, 656 (2d Cir. 2015) ("Under both federal and New York law, an omission is actionable only if the defendant had a duty to disclose."). Because a manufacturer's duty to disclose generally arises in a direct-consumer transaction, *see Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 72 (E.D.N.Y. 2017), and Stern purchased from a third-party, he contends that Electrolux's duty to disclose arises from their superior knowledge of the defect, *see id.*; *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 263 (2d Cir. 2021) (recognizing duty to disclose "may

# SPA-13

arise . . . where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge" (quotation omitted)).  But the claim fails for the same reason his omission-based GBL claim fails—Stern's own allegations demonstrate Electrolux did not have exclusive or superior knowledge of the defect.  (*See* Am. Compl. ¶ 64).  Information about the defect was readily available to Stern—his Amended Complaint includes reviews posted publicly that he could have read prior to purchasing the refrigerator.  (*Id.*).

With respect to negligent misrepresentation, Stern's failure to allege any misrepresentation by Electrolux in connection with his GBL claims dooms this claim as well.  "The elements of a claim for negligent misrepresentation under New York law are (1) a duty in the defendant, as the result of a special relationship, to give correct information; (2) a false representation that the defendant knew [or] should have known to be incorrect; (3) the defendant's knowledge that the plaintiff wanted the information supplied for a serious purpose; (4) the plaintiff's intent to rely upon the information; (5) reasonable reliance; and (6) damages."  *Aaronson v. Kellogg Co.*, 837 F. App'x 850, 851 n.2 (2d Cir. 2021) (citing *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012)).  As discussed with respect to Stern's GBL claims, he fails to identify any false or misleading representation made by Electrolux.  He therefore cannot state a claim for

# SPA-14

negligent misrepresentation, which similarly requires a false representation by the defendant.[3]

In sum, Stern's fraudulent concealment and negligent misrepresentation claims fail for the same reasons as his GBL claims.

## III.    Breach of Warranty Claims

"[T]o asse[r]t a claim for breach of an express or implied warranty under New York law, a buyer must provide the seller with timely notice of the alleged breach." *MacNaughton*, 67 F.4th at 100 (quotation omitted); *see also* N.Y. U.C.C. § 2-607(3)(a) ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]").

Stern's notice to Electrolux regarding the alleged breach of warranty was not timely.  Contrary to his contention that he "immediately informed Electrolux that the drawers and shelving broke," (Pl.'s Opp'n to Def.'s Mot. to Dismiss dated July 17, 2025, Dkt. No. 33-6 at 7), the Amended Complaint indicates that he did not inform Electrolux until October 2021, (Am. Compl. ¶¶ 36–37), 14–17 months after they broke, (*see id.* ¶ 35 (alleging the shelving "began breaking within six to nine months of purchase")).[4]  In the

---

[3] Stern's additional allegation that Electrolux made "misrepresentations in its standard written warranty and otherwise that it would repair defective refrigerators," (Am. Compl. ¶ 162), does not change the result.  Stern does not allege any part of the warranty was false—he only makes cursory allegations that it was unconscionable.  (*Id.* ¶¶ 62–63).

[4] To the extent Stern meant that the refrigerator began breaking within six to nine months from when it was delivered in February 2020, his 11–14-month delay in notifying Electrolux after the shelving broke still fails to satisfy the timely notice requirement.

14

# SPA-15

prior case, Judge Lindsay concluded that a 19-month gap between the notice and the discovery of the defect "lack[ed] the temporal proximity required to satisfy the notice requirement." *Stern*, 2024 WL 416495, at *10.  Stern's new allegations do not cure this defect—the 14-to-17-month gap between his discovery of the defect and his notice to Electrolux still fails to satisfy the requirement of timely notice.  *See, e.g., Lancaster v. Am. Textile Co.*, 719 F. Supp. 3d 204, 224 (N.D.N.Y. 2024) (finding plaintiff's complaint insufficient to satisfy timely notice requirement where it was filed 11–23 months after she purchased the product).  Even if Stern could satisfy the timely notice requirement, his breach of warranty claims still fail for the other deficiency identified by Judge Lindsay, which he has not cured.  Stern has not demonstrated privity between him and Electrolux, which is required to sustain a breach of warranty claim where a plaintiff alleges only economic injury.  *Stern*, 2024 WL 416495, at *11.

CONCLUSION

For the reasons explained above, Electrolux's motion to dismiss is granted, and the Court dismisses Stern's claims with prejudice and without leave to amend.  Across his two cases, Stern has filed three complaints and failed to cure previously identified deficiencies.  *See Sprague v. Salisbury Bank & Tr. Co.*, 969 F.3d 95, 101 (2d Cir. 2020) ("'Repeated failure to cure deficiencies by amendments previously allowed' is a valid

# SPA-16

reason to deny leave to amend.") (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  The

Clerk of Court is directed to close this case.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:   March 19, 2026
        Central Islip, New York

# SPA-17

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
DAVID STERN,
On Behalf of Himself and All
Other Persons Similarly Situated,

                Plaintiff,

        - against -

ELECTROLUX HOME PRODUCTS, INC.,

                Defendant.
-------------------------------------------------------------X

**JUDGMENT**
CV 24-8204 (SJB) (ARL)

A Memorandum and Order of Honorable Sanket J. Bulsara, United States District Judge, having been filed on March 19, 2026; granting Defendant Electrolux's motion to dismiss; dismissing Plaintiff's claims with prejudice; and denying leave to amend, it is

**ORDERED AND ADJUDGED** that Plaintiff David Stern take nothing of Defendants Electrolux Home Products, Inc.; that Defendant Electrolux Home Products Inc.'s motion to dismiss is granted; that Plaintiff's claims are dismissed with prejudice; that leave to amend is denied; and that this case is closed.

Dated: March 20, 2026
       Central Islip, New York

                              BRENNA B. MAHONEY
                              CLERK OF COURT

                     BY:    /S/ JAZMIN M. CUBANO
                              DEPUTY CLERK